BANCO POPULAR DE PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL H. VÁZQUEZ, d/b/a TROPICAL CONSTRUCTION COMPANY, Defendant and Appellee; MARYLAND CASUALTY COMPANY, Intervener and Appellee, PUERTO RICO RENEWAL AND HOUSING CORPORATION, Intervener and Appellant; BANCO POPULAR DE PUERTO RICO, Plaintiff and Appellee, *v.* RAFAEL H. VÁZQUEZ, d/b/a TROPICAL CONSTRUCTION COMPANY, Defendant and Appellee; MARYLAND CASUALTY COMPANY, Intervener and Appellant, PUERTO RICO URBAN RENEWAL AND HOUSING CORPORATION, Intervener.

Nos. R-64-42, R-64-44.    Decided April 1, 1969.

*José R. Vélez Torres, Josefina Ruiz Carrillo, José M. Cabreras Deetjen, Eugenio Ramos Ortiz,* and *Raúl Barquet Trujillo* for the Puerto Rico Renewal and Housing Corporation. *Baragaño, Trías, Saldaña, Harris & Francis* and *William H. Preston, Jr.,* for Banco Popular. *Rivera Zayas, Rivera Cestero & Rúa* for Maryland Casualty Company.

Second Division composed of Mr. Justice Hernández Matos, as Chief Judge of Division, Mr. Justice Santana Becerra, Mr. Justice Dávila, and Mr. Justice Torres Rigual.

MR. JUSTICE SANTANA BECERRA delivered the opinion of the Court.

On appeal R-64-42 we issued a writ of review at the request of the Urban Renewal and Housing Corporation (U.R.H.C.). On appeal R-64-44 we issued a writ of review at the request of the Maryland Casualty Co. Both petitions for review were requested against the judgment rendered by the Superior Court, San Juan Part, on December 10, 1963, which

determined the preferred right of the plaintiff-appellee, Banco Popular de Puerto Rico over certain sums of money.

According to the findings of fact filed by the trial court:

(1) The Urban Renewal and Housing Corporation (U.R.H.C.) contracted with Rafael H. Vázquez, doing business as Tropical Construction Co. for the construction of two public housing developments, one in Trujillo Alto and another in Luquillo.

(2) In compliance with the conditions of the contract, Rafael H. Vázquez posted two bonds underwritten by Maryland Casualty Co. to secure the faithful completion, performance, and payment of the works.

(3) According to the provisions of paragraph 9 (b) of the general conditions of the construction contract, the U.R.H.C. retained the equivalent of 10% of the periodic certifications submitted by the contractor for work done. Said clause of the general conditions reads textually thus in the language it was drafted.[1]

(4) On August 22, 1962, by virtue of the provisions of the contract, the U.R.H.C. terminated the same by reason of nonperformance by the contractor Rafael H. Vázquez. At that time the contractor had already paralyzed the works on his own. The work was finished by the U.R.H.C. itself with the intervention of other contractors. On September 18, 1963, date of the hearing of the case, U.R.H.C. was the entity which was paying for the completion of the projects, without the Maryland Casualty Co., as Vázquez' surety, having paid up to that time any amount for its completion.

---

[1] "In making such partial payments for the work, there shall be retained 10% of the estimated amount until final completion and acceptance of all work covered by the Contract; Provided, however, that after 50% of the work has been completed, if the Corporation determines that the Contractor's performance and progress have been satisfactory, the Corporation *may make* any of the remaining partial payments in full or any subsequent monthly work properly performed and progressing satisfactorily." (Italics ours.)

(5) Rafael H. Vázquez and Maryland Casualty Co. had signed a document in favor of Maryland entitled *Blanket Indemnity Agreement* of November 24, 1958, by virtue of which Maryland as surety reserved certain rights of the contractor over the contract.[2]

(6) At the Luquillo project, upon being completed by new contractors, it was necessary to remodel the shoes, for which the same had to be destroyed since they did not have the required concrete, and because the latter was of inferior quality.

(7) During the month of July 1962 Rafael H. Vázquez carried out some works in the Luquillo project which had to be paid for. At the time that Vázquez was declared in default and U.R.H.C. took charge of finishing the works, the U.R.H.C. had retained the amount of $86,210.13 equivalent to the 10% mentioned in the foregoing paragraph 3.

(8) About August 1962 a certification submitted by Vázquez to the U.R.H.C. in the amount of $16,933.11 after the retention of the 10% was pending.

(9) The trial court made also the following findings: (a) that the Banco Popular had been financing Vázquez in these projects; (b) that in conversations between the surety, Maryland Casualty Co., and the Banco Popular, the former had authorized the U.R.H.C. on July 26, 1962 to pay contractor

---

[2] The pertinent clause of said indemnity agreement, in the language it was agreed, reads thus:

"That upon notice to, or discovery by, the Surety of the failure of the Applicant to comply with any provisions of any contract bonded under this agreement, the Surety may immediately take possession of such plant and materials as the Indemnitors may own or have upon, or adjacent to, or intended to be used upon said work, so that the Surety may use the same in the prosecution of such contract, and right to possession of such plant and materials shall not be considered as waived by any delay on the part of said Surety to exercise said right. In the event of the Applicant named in any such bond being declared in default by the obligee therein named, the Surety shall have the right to collect and receive all reserve percentages and all moneys due and to become due such Indemnitors under said contract and to hold and apply the same as collateral to this agreement."

Vázquez 50% of the total amount retained and that that amount be sent to the bank to reduce the contractor's debt. This determination of Maryland in benefit of the bank was not accepted by the U.R.H.C.

The question in issue was raised when the bank, on June 19, 1962, filed a complaint against Rafael H. Vázquez for the recovery of promissory notes in favor of the bearer in the sum of $64,500, principal and interest owed, and attorney's fees.

In order to secure the effectiveness of the judgment, which in due time could be entered in its favor, the bank obtained a writ of attachment on July 19, 1962 in connection with several properties owned by Rafael H. Vázquez; among them the attachment of the amount of $86,210.13, which on account of the retention of the 10% was in the possession of the U.R.H.C. subject to the results of the contract, was ordered.

Vázquez did not answer the complaint, and on August 30, 1962 the clerk of the San Juan Part entered judgment in favor of the bank for the amounts claimed.

The day prior to the entry of judgment, August 29, 1962, the Maryland Casualty Co. filed a third party complaint and claimed a preferred right over that of the Banco Popular concerning the funds in the U.R.H.C. which could belong to Vázquez, preferred right which it invoked relying on the clauses of the bonds executed by it and on the indemnity agreement above-copied.

On April 30, 1963 the U.R.H.C. filed a third party complaint. It alleged Vázquez' nonperformance; it invoked a preferred right under the construction contract over amounts which could belong to Vázquez in order to meet the costs of his nonperformance and completion of contract. After the hearing on the merits and on the basis of its findings the trial court rendered judgment with the following pronouncements:

"In view of the findings of fact and conclusions of law previously stated, which form part of this judgment, the court

states that the plaintiff, Banco Popular de Puerto Rico, has a preferred right over that of intervener, Maryland Casualty Company, with regard to the funds of the certifications presented and in process at the time when defendant, Rafael H. Vázquez, had been declared 'in default' and that likewise the plaintiff, Banco Popular de Puerto Rico has a preferred right to the amounts of the certifications of the month of July 1962, which were in process of approval, against the intervener U.R.H.C. up to the time when the intervener, Maryland Casualty Company, waived, by its letter of July 26, 1962, said amounts and it also has a preferred right with respect to the remaining part of the amount retained which had accrued at the time the intervener, Maryland Casualty Company, agreed that defendant be paid fifty percent (50%) of the same, and only if defects which must be corrected or claims in connection with the projects of Trujillo Alto and Luquillo arise, the intervener, U.R.H.C., can dispose of said sums. The costs are imposed on the intervener Maryland Casualty Company, on U.R.H.C., and on defendant, Rafael H. Vázquez, without including attorney's fees."

On appeal both appellants challenge the foregoing pronouncements. Maryland alleges that it has a preferred right over the Banco Popular to the amounts pending payment by virtue of its agreements with contractor Vázquez. The U.R.H.C. likewise challenges said pronouncements relying on the clauses of the construction contract and on Vázquez' nonperformance, and maintains that it owes nothing nor should owe anything to Vázquez, and is entitled to retain the attached amount. The U.R.H.C. alleges that pursuant to the provisions of the act which created it said amounts were not attachable inasmuch as, because of the nonperformance by the contractor, they belonged to it under the contract and not to the contractor. The U.R.H.C. also invokes the fact that the surety Maryland Casualty Co. had not completed the works nor had contributed any amount towards their completion under its obligations as surety. We need not make any determination now, on the merits herein with respect to those contentions. Let us turn to the applicable law:

The Banco Popular was not a contracting party in these juristic acts in any character or capacity whatsoever as were Vázquez, the contractor, Maryland, the surety, and U.R.H.C., the owner of the works. Therefore the right of the Banco Popular arises only from the order of attachment entered by the Superior Court, San Juan Part, to secure the effectiveness of the judgment, or as judgment creditor over attached property. Said order of attachment is the law which governs the question in issue. The aforesaid order of attachment states thus:

"(a) The Marshal of the San Juan Part of the Superior Court of the General Court of Justice of Puerto Rico will proceed to attach the following credits: $34,714.95 corresponding to project P.R. 370 in the town of Trujillo Alto and $51,495.18 corresponding to project P.R. 355 in the town of Luquillo which defendant Rafael H. Vázquez has with the Puerto Rico Urban Renewal and Housing Corporation for approximately $86,210.13, and to require the Puerto Rico Urban Renewal and Housing Corporation to deliver said amount *if said credit were demandable at the present time.* If said credit were demandable at the present time the Puerto Rico Urban Renewal and Housing Corporation will deliver to the Marshal of the Superior Court of Puerto Rico, San Juan Part, the amount of $86,210.13, and if it were not *it shall retain in its possession the indicated amount until the same becomes demandable, on which date it will remit and deliver it to the aforesaid public official.* In case such credits are not demandable at the present time, the Puerto Rico Urban Renewal and Housing Corporation shall retain in its possession, *as depositary* appointed by this court and subject to the attachment ordered, the amount of $86,210.13, the said Corporation being precluded from paying or disposing of it in any other manner, and shall remit same, as previously indicated, *when it becomes demandable,* to the Marshal of the Superior Court, San Juan Part of the General Court of Justice of Puerto Rico by reason of property attached by the Banco Popular de Puerto Rico in this proceeding." (Italics ours.)

Subsequent to the entry of judgment the bank requested its execution. On several occasions it pointed out to the Mar-

shal properties to be attached, which in fact were attached and sold at public auction awarding them to the bank.

We have examined the record and there is no order of attachment decreed by the court, neither to secure effectiveness of judgment nor for its execution; also there is no attachment levied on the certifications which were pending payment for work done by Vázquez in July and August when the contract was completed.

■ Since the court had not ordered or levied attachment on the total sum of the certifications pending approval and payment at the completion of the contract, the pronouncements concerning the preferred right of the bank over the total sum of said certifications were inappropriate in the judgment, inasmuch as the bank's right depended upon the existence of such attachment because it was not a contracting party in the construction contract. The mere fact that it was a general judgment creditor did not entitle the bank, either, to said pronouncements. See §§ 1821 to 1829, Civil Code, 1930 ed. *Cf. P.R. Bedding Mfg. Corp.* v. *Herger,* 91 P.R.R. 503 (1964).

■ Insofar as the amount of $86,210.13, over which attachment was levied, is concerned, the order was entered conditioned to the time when the said sum was liquid and demandable in favor of the debtor Vázquez. The record shows that as a result of Vázquez' nonperformance, when the attachment of that sum was ordered, when the trial was held, and when the judgment appealed from was rendered, no determination existed on this particular.

In view of the foregoing, the pronouncements relating to the certifications in process at the completion of the contract will be reversed. Insofar as the amount of $86,210.13 is concerned the judgment will be set aside and the record will be remanded with instructions to: (1) Determine with the pertinent evidence whether the aforesaid amount of $86,210.13, after the works have been finally completed, has become Váz-

quez' property or part thereof. If no part of said amount belongs to Vázquez, nothing will correspond to the bank which as attaching creditor has no more rights to those funds in the hands of a third party than those that to its debtor could correspond, and (2) If from the evidence it would appear that this amount or part thereof is liquid in favor of Vázquez, then it would be in order to determine the preferred right to the same between the bank as attaching creditor and Maryland as surety, provided it would be established that subsequent to the rendering of judgment by the Superior Court, Maryland disbursed amounts to the U.R.H.C. in fulfillment of its obligations as surety of the contract.

Judgment will be rendered consistent with the foregoing paragraph.